IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| CHRISTIAN R. ATLAKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-6071-CV-SJ-ODS |
| ) | |
| HARLEY-DAVIDSON MOTOR ) | |
| COMPANY GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT WITH RESPECT TO COUNTS I AND II AND DISMISSING COUNT III
WITHOUT PREJUDICE

Pending is Defendant's Motion for Summary Judgment. The motion (Doc. # 27) is granted with respect to Counts I and II, but not with respect to Count III. Count III is dismissed without prejudice.[1]

I. BACKGROUND

Plaintiff agrees many of the facts Defendant advances are uncontroverted. Plaintiff began working for Defendant in January 2002. SUF ¶ 1.[2] Defendant's attendance policy from January 5, 2004, through the end of Plaintiff's employment provided that "[a]n employee who is absent for three (3) consecutively scheduled workdays without properly reporting the absence by the appropriate process will be considered a voluntary quit and such employee will be terminated." SUF ¶ 3.

---

[1] Defendant's Motion to Strike (Doc. # 25) is denied as moot. Plaintiff's Motion for Hearing (Doc. # 34) is denied because the issues are straightforward, the facts are largely uncontested, and a hearing is not necessary.

[2] "SUF ¶ ___" is a reference to a Statement of Uncontroverted Fact proffered by Defendant. Its use as a source indicates Plaintiff admitted the fact (or, at least, that portion of the fact) in his response.

In September 2004, Plaintiff reported a work-related injury to his right wrist, and received a Workers' compensation Information Sheet (the "Information Sheet"). SUF ¶ 11. The Information Sheet, *inter alia,* instructs employees not to take themselves off work without authorization from the treating physician and warns that non-approved absences will be "documented as outlined in the Employee Attendance Policy." The sheet also briefly discusses the interplay between workers' compensation leave and Family and Medical Leave Act leave:

> If you are placed off of work by your treating physician and you are eligible for FMLA then your leave will be designated as FMLA. Workers' compensation Medical Leave will run concurrently with the 12 weeks of family medical leave you can take because of your own serious health condition.

Plaintiff aggravated his injury two or three times after his initial report, and Defendant referred him to an outside health care provider (Dr. Anne Rosenthal). SUF ¶¶ 15-16. On or about May 10, 2005, it was decided that surgery would be performed; the surgery took place on May 20. Plaintiff's Dep. at 92-93.

Between September 2003 and March 2005, Plaintiff had completed paperwork to apply for FMLA leave on at least eight occasions, and during his deposition he admitted he knew what forms were to be used for this purpose. SUF ¶ 10. In particular, he was aware that a health care provider needed to provide documentation to support such a request. Plaintiff's Dep. at 75-76. When asked why he did not fill out the forms in connection with his wrist surgery, Plaintiff testified "[i]t was a work comp case." Plaintiff's Dep. at 94. Later, he denied hearing, reading, or believing that he did not need to file such a request when an absence was also covered by workers' compensation. Plaintiff's Dep. at 96-97.

Two days before his surgery, Plaintiff sent an e-mail to Defendant's Health and Safety Department advising of the scheduled surgery and declaring that he was not planning to be at work from May 20 through May 31. SUF ¶ 19. On May 19, Donna Blanc (a representative from Defendant's medical department) responded and, among other things, advised Plaintiff his workers' compensation case manager (Kara LaTessa)

had told Defendant that Plaintiff would return to work on May 23, albeit with restrictions. SUF ¶ 20.

Following surgery, Dr. Rosenthal prepared a note indicating Plaintiff should not use his right hand/arm and should remain off work until May 21. SUF ¶ 22.[3] May 21, 2005, was a Saturday, and Plaintiff's next scheduled work day was May 23. Plaintiff did not report for work on May 23, 24, 25 or 26. SUF ¶ 23. On May 26 – after his shift had started – Plaintiff spoke with Janice Odegard, a nurse in Defendant's medical department. He reported he had been prescribed Percocet and was unable to drive, even though Dr. Rosenthal had not imposed this restriction. SUF ¶ 25. Odegard told Plaintiff that, because he had not returned to work on May 23, he needed to obtain a return-to-work excuse covering the days he missed and should also provide a copy of his prescription to the medical office. SUF ¶ 28. Plaintiff contacted Dr. Rosenthal's office, but Dr. Rosenthal declined to provide documentation excusing the absences after May 21. SUF ¶ 29.

Plaintiff did not return to work until May 31, 2005, and no physician – then or now – indicated he should remain off work beyond May 21. SUF ¶ 30. On June 22 – after discussions between Plaintiff, his union, and Defendant – Defendant terminated Plaintiff's employment for violating the "three day no-call, no-show policy." SUF ¶ 32.

On or about May 8, 2006, Plaintiff requested a service letter pursuant to section 290.140 of the Revised Missouri Statutes. SUF ¶ 35. An employee in Defendant's Human Resources Department (Maria Rovirosa) sent a draft of the response to Defendant's legal department in Milwaukee, Wisconsin. SUF 36. Plaintiff contends he did not receive a letter until July 11, 2007 – after this lawsuit was filed, and after Defendant learned Plaintiff alleged he had not received the letter. The July letter stated Plaintiff was terminated for failing to show for work or call in advance for three

---

[3] The note places no clear duration on the restricted use of Plaintiff's arm/hand, so it is not clear whether (1) the restriction from hand/arm use expired (like the work restriction) on May 21 or (2) Dr. Rosenthal released Plaintiff to return to work without using his arm/hand. This confusion could have been clarified if Plaintiff obtained the certification discussed later in this order. The answer may have been provided when Dr. Rosenthal declined to excuse Plaintiff's work absences beyond May 21.

3

consecutive days and does not contain any inaccurate information. SUF ¶ 39. While looking for work following his termination, Plaintiff was never asked for a service letter or told that he was not being hired because he did not have a service letter. SUF ¶ 40.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A. FMLA

Plaintiff's first two claims involve the FMLA. Count I alleges Defendant failed to treat his time off as covered by the FMLA, and Count II alleges he was terminated for seeking FMLA leave. The two issues are intertwined and will be discussed together. The Court does not accept many of Defendant's arguments, but agrees that the record demonstrates Defendant is entitled to judgment as a matter of law.

4

Defendant's primary position is that Plaintiff failed to (1) submit the forms specifically created for employees to request FMLA leave and (2) failed to follow the company's procedures for absences. These positions are not valid under the law, particularly as construed by the Eighth Circuit.

> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed . . . . The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave (see § 825.305).

29 C.F.R. § 825.302(c) (2005).[4] Per this regulation, Plaintiff's failure to specifically reference the FMLA is not fatal. E.g., Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d 847, 852 (8th Cir. 2002). Similarly, Plaintiff was not required to make the request in the form or manner specified by his employer; an e-mail would have been sufficient. "[F]ailure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d); see also 29 C.F.R. § 825.303(b).[5] In light of the law, and after construing the record in the light most favorable to Plaintiff, the Court concludes a jury could find Plaintiff's May 18, 2005, e-mail should have been treated as a request for FMLA leave.

---

[4] All references to the Code of Federal Regulations will be to the 2005 version.

[5] The latter regulation is intended to apply when the employee does not foresee the leave, and Defendant insinuates Plaintiff knew about his leave in advance. The insinuation is true to some extent, but the record suggests Plaintiff did not know about the surgery very far in advance and the provisions of section 825.303 are applicable.

5

This does not end the inquiry because merely asking for leave does not mean one is entitled to leave. Leave must be justified by one of the circumstances set forth in 29 U.S.C. § 2612(a)(1), and the only circumstance that can apply in this case is the fourth one: "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." The attendant regulations provide some further insight into what constitutes a "serious health condition." See 29 C.F.R. § 825.114. One of the requirements is a showing of an inability to work or perform other regular activities for three or more consecutive days. Id. § 825.114(a)(2)(i). "An employer may require that an employee's leave . . . due to the employee's own serious health condition . . . be supported by a certification issued by the health care provider of the employee." Id. § 825.305(a). Plaintiff was both advised of and aware of his obligation to provide the necessary certification, and attempted to obtain the necessary information from his doctor after his surgery. Ultimately, Plaintiff was unable to procure (and, obviously, failed to present to Defendant) the information necessary to demonstrate he had a "serious health condition" and justify FMLA leave. Having failed to provide this information, Plaintiff cannot now complain that his rights under the FMLA were violated.

Plaintiff points to excerpts from federal regulations[6] and Defendant's policies to argue that workers' compensation leave and FMLA leave are the same; therefore, if Plaintiff was on workers' compensation leave, he was also automatically entitled to FMLA leave. The Court rejects Plaintiff's argument.

Plaintiff relies heavily on the Information Sheet. To refresh the reader's memory, Paragraph 10 states as follows:

---

[6] Defendant describes these regulations as "obscure," insinuating they are entitled to less consideration than other (presumably, more prominent) regulations. The Court rejects the insinuation. All regulations contained in the Code of Federal Regulations are equally obscure (or prominent), and the Court is not aware of any ranking system that allows the Court to decide some regulations are more important than others. Defendant's later explanation – that the term "obscure" was meant to indicate a lack of judicial construction of the regulation – is inconsistent with the ordinary definition of the word "obscure."

> FMLA: If you are placed off of work by your treating physician and you are eligible for FMLA then your leave will be designated as FMLA. Workers' compensation Medical Leave will run concurrently with the 12 weeks of family medical leave you can take because of your own serious health condition.

Plaintiff focuses on the second sentence to support his argument, but attention must be paid to the first sentence. Everything contained in the paragraph presupposes that the employee is eligible for FMLA leave. Plaintiff was not eligible for FMLA leave (because he could not produce the medical certification), so the paragraph has no application to his situation. Plaintiff also relies on statements from Rovirosa and Odegard to the effect that FMLA leave and workers' compensation leave run concurrently, but once again those statements presuppose the employee is eligible for FMLA leave – and eligibility for FMLA leave requires certification from a physician. Rovirosa Dep. at 20, 47; Odegard Dep. at 20.

Plaintiff also utilizes 29 C.F.R. § 825.207 to support his argument, but the Court does not agree with Plaintiff's interpretation of that regulation. The regulation addresses whether the employee is paid while on FMLA leave. "Generally, FMLA leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave." 29 C.F.R. § 825.207(a). Thus, like Defendant's policies, this regulation presupposes the employee has satisfied the requirements for FMLA leave – which Plaintiff had not.

Later, the regulation dictates that "[i]f an employer designates the leave as FMLA leave . . . the employee's FMLA 12-week leave entitlement may run concurrently with a workers' compensation absence when the injury is one that meets the criteria for a serious health condition." Id. § 825.207(d)(2). This does not mandate FMLA leave whenever an employee is on workers' compensation leave – the provision applies only if the work-related injury also qualifies as a serious health condition under the FMLA. Plaintiff did not follow the procedures for establishing that his injury was a serious health condition, and the record demonstrates that it was not.

Section 825.207(d)(2) continues by explaining that because workers' compensation leave is not unpaid leave, an employee can rely on it to receive pay

7

without substituting accrued paid leave (e.g., vacation time) as provided in section 825.207(b). The import of these provisions is clear: ordinarily, FMLA leave is not paid leave, but a person on FMLA leave could elect to use accrued paid leave in order to continue receiving pay – but, if the leave *also* qualifies as workers' compensation leave, the two "forms" of leave run concurrently and the employee can receive pay (per the workers' compensation provisions) without tapping his accrued paid leave. There is, however, an exception:

> [I]f the health care provider treating the employee for the workers' compensation injury certifies the employee is able to return to a "light duty job" but is unable to return to the same or equivalent job, the employee may decline the employer's offer of a "light duty job". As a result the employee may lose workers' compensation payments, but is entitled to remain on unpaid FMLA leave until the 12-week entitlement is exhausted.

Again, the purpose of this provision is clear. A person on workers' compensation leave may be able to perform light duty work, at which point the person has a choice. They can accept the employer's offer of light duty work, in which case they are working and do not receive any form of leave. They can also reject the offer of light duty work, which terminates their entitlement to pay under most states' workers' compensation laws, but which does not terminate their entitlement to FMLA leave. This provision does not apply to Plaintiff's case because Plaintiff was not limited to light duty, was not offered a light duty job (because Plaintiff did not come to work), and did not "reject" an offer of light duty. The provision also does not apply because Plaintiff did not comply with the request for medical certification establishing he had a "serious health condition" within the meaning of the FMLA.

The uncontroverted facts demonstrate Plaintiff did not comply with the requirements for obtaining FMLA leave; therefore, Defendant did not improperly deny him leave or otherwise interfere with his rights under the FMLA. Defendant is entitled to judgment as a matter of law.

8

## B. The Service Letter

Plaintiff concedes he did not suffer actual damages from the delayed delivery of the service letter, so he is left with a claim for nominal damages and a potential claim for punitive damages. Even if the facts justify punitive damages,[7] the Court lacks original jurisdiction over the claim.

The Court had original jurisdiction over Counts I and II because they arose under the FMLA. Count III does not arise under federal law, so the Court has original jurisdiction over Count III only if diversity of citizenship exists and more than $75,000 is in controversy. 28 U.S.C. § 1332. Diversity of citizenship exists, but the amount in controversy is far less than $75,000. The burden to demonstrate the requisite amount in controversy falls on Plaintiff because he invoked this Court's jurisdiction. He need not definitively establish the amount of damages, but he must demonstrate a fact finder might legally award more than $75,000. E.g., James Neff Kramper Family Farm Partnerhsip v. IBP, Inc., 393 F.3d 828, 833 (8th Cir. 2005); Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002). Punitive damages are included in the amount in controversy, but claims for punitive damages are to "be given closer scrutiny" than the assertion of actual damages because they are speculative in nature and often overstated (or sought when unavailable). E.g., State of Mo. ex rel. Pemiscot County v. Western Sur. Co., 51 F.3d 170, 173-74 (8th Cir. 1995); Larkin v. Brown, 41 F.3d 387, 388-89 (8th Cir. 1994).

With these principles in mind, the question before the Court is: has Plaintiff demonstrated a fact finder could ever have legally awarded him more than $74,999 in punitive damages on the claim asserted in Count III? The Court concludes the answer is "no." Such an award would exceed the amounts approved by the Missouri Supreme Court, see Herberholt v. dePaul Community Health Ctr., 625 S.W.2d 617, 724 (Mo. 1981), and would certainly violate the Due Process Clause's limits on punitive damages.

---

[7]For what it's worth, the Court does not believe the Record supports a claim for punitive damages, and based on what the Court knows of the case it is unlikely the issue would even be submitted to the jury.

9

The Court thus had supplemental jurisdiction over Count III. 28 U.S.C. § 1367. A court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). Having dismissed all claims for which original jurisdiction existed, the Court declines to retain jurisdiction over Count III. Count III is dismissed without prejudice.

### III. CONCLUSION

Defendant is granted summary judgment on Counts I and II. Count III is dismissed without prejudice.

IT IS SO ORDERED.

DATE: October 6, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT